Donna and Rodney YARD, Individually and as Heirs of the Estate of Bradley Yard, Deceased, Appellants,

v.

DAIMLERCHRYSLER CORPORA-TION f/n/a Chrysler Corporation; Bill Utter Automobile Company, Inc. d/b/a/ Bill Utter Dodge, Appellees.

No. 2–99–192–CV.

Court of Appeals of Texas, Fort Worth.

April 5, 2001.

Publication Ordered May 3, 2001.

Lipscomb, Holland & Associates, Michael R. Lipscomb, Denton, for Appellants.

Clary & Clements, William K. Clary, Bridgeport, Clark, Thomas & Winters, David C. Duggins, Trek C. Doyle, Marnie A. McCormick, Austin, for Appellee Chrysler.

Touchstone, Bernays, Johnston, Beall & Smith, L.L.P., Dawn C. Woelfel and Randall G. Walters, Dallas, for Appellee Utter.

Panel A: CAYCE, C.J., and DAUPHINOT, J.

### OPINION

DAUPHINOT, Justice.

#### Introduction

Donna and Rodney Yard, individually and as heirs of the estate of Bradley Yard, deceased, appeal from the trial court's summary judgments for DaimlerChrysler Corporation, f/n/a Chrysler Corporation (Daimler) and Bill Utter Automobile Company, Inc., d/b/a Bill Utter Dodge (Utter). We affirm.

#### Background

The underlying lawsuit arose out of an automobile accident that occurred in Wise County on January 2, 1995. Bradley Yard was killed when his vehicle and that of Angela Melton were involved in a head-on collision. Bradley was not wearing his seatbelt when the accident occurred. The Yards sued Daimler on various legal theories, all of which center around their allegation that the air bag in Bradley's vehicle failed to deploy in the accident, thereby causing his injuries and death. The Yards sued Utter for negligence, gross negligence, strict products liability, and DTPA violations.

The Yards designated two experts to testify: Sylvanus Walker regarding accident reconstruction and Dr. Edward Friedlander regarding causation. Both experts were to testify about whether the air bag deployed, and Friedlander was also to testify about whether Bradley would have survived the accident if it had. Daimler moved to exclude Walker's testimony in its entirety and to preclude Friedlander from testifying about the two above issues. After a hearing, the trial court granted Daimler's motions. The Yards admitted that, without Walker's and Friedlander's opinions, they would have insufficient evidence to sustain a jury verdict.

Thereafter, Daimler moved for a no-evidence summary judgment on the ground that the Yards could not produce any evidence of causation. In response to Daimler's motion, the Yards produced only the depositions of their two disqualified experts and Rodney's affidavit, in which he stated that he had arrived at the accident scene with the fire department and noticed that the air bag in Bradley's car had not deployed. Utter also moved for summary judgment, although neither its motion nor the Yards' response is included in the appellate record. The trial court granted Daimler's and Utter's motions and rendered a take-nothing judgment against the Yards. This appeal followed.

#### Expert Qualifications

Rule 702 of the Texas Rules of Evidence permits a witness qualified as an

expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact issue.[1] Whether an expert is qualified is a preliminary question to be decided by the trial court.[2] The party offering the expert's testimony bears the burden of proving that the witness is qualified under rule 702.[3] The offering party must demonstrate that the witness possesses special knowledge as to the very matter on which he proposes to give an opinion.[4] A trial court's determination as to a witness's qualifications as an expert will not be disturbed absent an abuse of discretion.[5]

■ In their first point, the Yards assert the trial court erred in disqualifying Friedlander because he was qualified to testify as to the cause of Bradley's death, the effect of certain injuries on his body, and what did and did not happen to his body at the time of the collision. Daimler concedes that Friedlander, a medical doctor and pathologist, was qualified to testify about Bradley's injuries and the medical cause of his death, but contends Friedlander was not qualified to testify about whether those injuries were caused by the failure of the air bag to deploy.

The Yards do not direct us to any evidence that Friedlander had special knowledge about the effects of a deployed or failed air bag on an individual involved in an automobile accident like the one here. They merely assert he was qualified be-cause of his extensive training in medicine and forensic pathology.

Friedlander's deposition testimony indicates he was not completely comfortable with his expertise in this area. Friedlander admitted that he lacked special training in engineering or in occupant kinematics (the movement of bodies in a vehicle) and had no expertise related to automobile crash tests. He testified that he had been asked to give an opinion about the medical cause of death and also stated:

> I've been asked to give an opinion based on what doctors know about air bags and what pathologists know about air bags and what medical type people know about air bags as to whether the air bag opened.
>
> . . . .
>
> . . . I'm giving you an opinion that it's more likely than not, just from what I have looked at and knowing that there's areas that I don't know much about and knowing that there's other areas to be considered—just from looking at the autopsy, it seems to me much more likely that the air bag didn't open.
>
> . . . .
>
> . . . But I'm not giving this as something I'm extraordinarily confident of like I have done in some other criminal trials where there's only the medical evidence.

This case was the first air bag case on which Friedlander had consulted. He based his opinion that the air bag failed on the fact that Bradley suffered a basilar skull fracture—a fracture at the base of

---

1. TEX.R. EVID. 702.

2. *Id.* 104(a); *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718 (Tex.1998).

3. *Broders v. Heise,* 924 S.W.2d 148, 151 (Tex. 1996); *accord Penry v. State,* 903 S.W.2d 715, 762 (Tex.Crim.App.) ("The party proffering the expert witness bears the burden of show-

ing that the witness is qualified on the specific matter in question."), *cert. denied,* 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).

4. *Broders,* 924 S.W.2d at 152–53.

5. *Gammill,* 972 S.W.2d at 718–19.

his skull caused by his head moving forward while his chin had stopped suddenly. Bradley had only two small abrasions on his chin rather than a very large one. Friedlander believed that the small abrasions were caused by impact with the steering wheel or the dashboard, but that impact with a deployed air bag would have caused a very large abrasion. However, Friedlander admitted that "[f]aces are very often above air bags," so that the abrasions occur on the chest rather than the chin. Friedlander was also influenced by the fact that he could not find an instance in the published literature on the subject where an unrestrained driver whose air bag had worked had died from a basilar skull fracture.

In the course of his medical practice, Friedlander had encountered only three basilar skull fractures, one of which had been caused by a car wreck. He did not remember anything about the forces involved in that situation. In addition, because he was not an engineer, Friedlander did not know what types of forces were required to cause this particular fracture. Instead, he relied on the calculations in an article on basilar skull fractures. Also, Friedlander did not try to calculate what forces would be generated with and without an air bag "because that would be pretentious and that would be getting out of the area that I am—that I'm good at. So I'll leave these to the biomechanics people and ... the engineering people."

Friedlander concluded, based on his reading of published literature on the subject, that a properly deployed air bag lowered the fatality rate in frontal collisions by approximately 30 percent. But he did not know whether chances of survivability with an air bag increased or decreased depending on the speed of the vehicle. He also could not quantify what additional benefit would be obtained by using a seat belt with the air bag.

This record shows that Friedlander's opinions on whether a failed air bag caused Bradley's injuries were based more on Friedlander's review of the published literature about basilar skull fractures and the statistical effects of air bags on fatality rates than on his expertise as a medical doctor and forensic pathologist. While Friedlander's medical training and experience may have contributed to his ability to understand the published literature, there is no evidence that he had any more specialized knowledge about the effects of deployed or failed air bags in automobile accidents than other well-educated individuals with access to the same literature. Accordingly, the trial court did not err by concluding that Friedlander was not qualified to testify about whether Bradley would have survived the accident if his air bag had deployed.

■ The Yards complain that the trial court did not make any findings of fact about Friedlander's qualifications. Even assuming the Yards had preserved this complaint by raising it in the trial court,[6] where, as here, an abuse of discretion standard of review applies to a trial court's ruling, findings of fact and conclusions of law, while helpful, are not required.[7]

■ The Yards also assert, without elaboration, that Walker was "a qualified witness and [met] the standards of *Robinson.*"[8] This point as to Walker is waived for failure to present a clear and concise

6. *See* Tex.R.App. P. 33.1(a).

7. *Crouch v. Tenneco, Inc.,* 853 S.W.2d 643, 649 & n. 3 (Tex.App.—Waco 1993, writ denied) (op. on reh'g).

8. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549 (Tex.1995).

argument for the contentions made, with appropriate citations to authorities and to the record.[9] The Yards do not explain why Walker was qualified to testify as an accident reconstruction expert, nor do they direct us to any testimony that he would have offered regarding causation. Because the Yards do nothing more than summarily state their argument, they have failed to preserve it for review.[10]

## Summary Judgment for Daimler

■ The Yards also do not brief their complaint—also raised in issue one—that the trial court erred by granting a no-evidence summary judgment for Daimler.

■ After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[11] The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[12]

Daimler moved for summary judgment on the ground that the Yards could not prove Daimler caused their injuries. As we have noted, the Yards did not produce any evidence of causation apart from the depositions of their two experts. Rodney Yard stated by affidavit that he noticed the air bag in Bradley's car had not deployed. Assuming for argument's sake that a lay person can testify on the issue of air bag deployment, evidence that the air bag failed is not evidence that this failure caused Bradley's injuries and death. Accordingly, summary judgment for Daimler was proper. We overrule issue one.

## Summary Judgment for Utter

■ In their second issue, the Yards complain that the trial court improperly granted summary judgment for Utter because a material fact issue exists about whether Utter made misrepresentations to the Yards about Bradley's vehicle. This issue is waived.

The argument portion of a brief "must contain a clear and concise argument for the contentions made, with appropriate citations to [legal] authorities and to the record." [13] The Yards' brief on this issue contains only one record reference, which is to their petition. This reference is not evidence that Utter made any misrepresentations to the Yards. Pleadings, even if sworn to, are not summary judgment proof.[14]

The Yards point to no other evidence of Utter's alleged misrepresentations and no legal authority for the Yards' assertion that the trial court erred in granting summary judgment. As an appellate court, we are not required to search the record, with no guidance from the Yards, for evidence raising a material fact issue.[15] Likewise, we have no duty to search the record for other possible trial court error.[16] We overrule issue two.

9. Tex.R.App. P. 38.1(h).

10. *Keever v. Finlan*, 988 S.W.2d 300, 314 (Tex.App.—Dallas 1999, pet. dism'd) (op. on reh'g).

11. Tex.R. Civ. P. 166a(i).

12. *Id.*; *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 71 (Tex.App.—Austin 1998, no pet.).

13. Tex.R.App. P. 38.1(h).

14. *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex.1995).

15. *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex.App.—Fort Worth 1996, writ denied).

16. *Harkins v. Dever Nursing Home*, 999 S.W.2d 571, 573 (Tex.App.—Houston [14th Dist.] 1999, no pet.).

## Conclusion

Having overruled the Yards' issues on appeal, we affirm the trial court's summary judgments for Daimler and Utter.