NO. 07-12-00089-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 29, 2012

_____

CLARENCE DAVIS, JR., APPELLANT

v.

AETREX WORLDWIDE, INC., F/K/A APEX FOOT HEALTH
INDUSTRIES, INC., APPELLEE

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-548,128; HONORABLE LESLIE HATCH, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


**OPINION**


Appellant, Clarence Davis, Jr., appeals from the trial court's granting of a no-evidence motion for summary judgment in favor of appellee, Aetrex Worldwide, Inc., and resulting take-nothing judgment. In two issues, Davis contends that the trial court erred in sustaining Aetrex's objections to the opinions of his expert witness, and that the trial court erred in granting Aetrex's no-evidence motion for summary judgment. We will affirm the judgment of the trial court.

Factual and Procedural Background

On July 14, 2007, Davis, who is a diabetic, attended a community celebration in his hometown of Seagraves, Texas. Davis arrived at the celebration at approximately 9:30 a.m. and stayed until approximately 6:00 p.m. Late in the afternoon, around 4:30 or 5:00 p.m., Davis began to complain that his feet felt as if they were burning. He was taken home and, when his shoes were removed, it was discovered that the top of his feet were blistered. Davis was taken to the emergency room at Seminole Memorial Hospital where a physician treated his feet for blisters. Davis was sent home from the emergency room that day. Upon Davis's return to the hospital ten days later, the treating physician noted that his feet contained E. coli and staph aureus and that his feet were necrotic. Davis was then transferred to a hospital in Lubbock for specialized treatment. Subsequently, Davis underwent a below-the-knee amputation of both legs.

At the time of Davis's attendance at the community celebration, he was wearing a pair of diabetic shoes that had been prescribed by the Veteran's Hospital in Big Spring, Texas. Davis had acquired the shoes in the fall of 2006. The shoes were manufactured by Aetrex and shipped directly to Davis. The shoes in question were black in color.

Davis filed suit against Aetrex alleging negligence, gross negligence, product liability, and breach of warranty. After certain discovery, Aetrex filed a traditional and no-evidence motion for summary judgment. Aetrex also filed an objection to the testimony of Davis's expert, Dr. Andrew Schneider. Ultimately, the trial court sustained

Aetrex's objections to Schneider's testimony, and granted Aetrex's no-evidence motion for summary judgment.

Davis appeals contending that the trial court erred in, 1) sustaining Aetrex's objections to the testimony of Schneider, and 2) granting Aetrex's no-evidence motion for summary judgment.

## Dr. Schneider's Testimony

The trial court ruled that Dr. Schneider lacked the qualifications to testify regarding the causal relationship between the shoes and the injury sustained by Davis. In addition, the trial court ruled that Dr. Schneider lacked the qualifications to testify regarding Davis's marketing defect claim. Finally, the trial court sustained Aetrex's objections that Dr. Schneider's opinions were conclusory and speculative.

Standard of Review

We review the trial court's ruling excluding expert testimony for abuse of discretion. See McIntyre v. Ramirez, 109 S.W.3d 741, 749 (Tex. 2003); Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718-19 (Tex. 1998). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner without any regard to guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

Applicable Law

Rule 702 of the Texas Rules of Evidence permits a witness qualified as an expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact in issue. TEX. R. EVID. 702. Whether a witness is qualified as an expert is a preliminary question for the trial court to determine. Id. 104(a); Gammill, 972 S.W.2d at 718. The burden to prove an expert's qualification is on the offering party. Yard v. DaimlerChrysler Corp., 44 S.W.3d 238, 241 (Tex.App.—Fort Worth 2001, no pet.) (citing Broders v. Heise, 924 S.W.2d 148, 151 (Tex. 1996)). Further, the offering party must demonstrate that the proposed expert witness possesses expertise concerning the actual subject about which they are offering an opinion. Gammill, 972 S.W.2d at 718.

Evidence and Expert's Opinion

Davis's sole expert witness was Dr. Schneider. From the record before us, we learn that Dr. Schneider is a practicing podiatrist who treats diabetic patients. He has been practicing podiatry for approximately 19 years. Dr. Schneider states that he had treated approximately 20 patients who had suffered sunburns on their feet and two patients who had suffered chemical burns on their feet. He has never treated patients who had injuries similar to the injuries suffered by Davis. Dr. Schneider has never treated Davis personally. He did review the medical reports of Davis's treatment at the Seminole Memorial Hospital. Dr. Schneider had no knowledge of what the temperature was on the day Davis suffered his injuries. He did not know what the cloud cover was

4

like on the day of the injuries. Dr. Schneider did not know how long Davis's feet were exposed to direct sun light. Dr. Schneider did review an article printed in the Journal of the American Podiatric Medical Association (JAPMA) regarding "Effect of Shoe Color on Shoe Temperature and Potential Solar Injury to the Insensate Foot." He had not reviewed, nor was he aware of, any other publications or studies having to do with heat retention effects of different colored shoes. Dr. Schneider testified in answer to a question regarding heat retention, "I'm not a physicist, I'm a podiatrist." Dr. Schneider has never done any type of heat retention testing. Dr. Schneider stated that he is not an expert in retail and packaging; in fact, he testified that he did not think he was the one to ask about such matters. He did, however, opine that Aetrex should have warned consumers that there was a risk to their feet when black or dark colored shoes were worn in conditions of prolonged exposure to the sun. Dr. Schneider further stated that he had never seen such a warning on any diabetic shoes, Aetrex or otherwise. Dr. Schneider also was of the opinion that the absence of such a warning made the shoes in question unreasonably dangerous and a proximate cause of the burns to Davis's feet.

Dr. Schneider's opinions rely extensively on one published article. The JAPMA article in question was published, according to the record, in July of 1998. A review of the article reveals that when shoes were placed about 19 inches from an infrared heat lamp, the black shoes became warmer quicker than the white shoes. It is interesting to note that, in the discussion portion of the article, the authors state, "It is generally recognized that darker material tends to absorb more heat than lighter colored material." There is nothing in the article that attempts to correlate the time the shoes were exposed to the heat lamp to the natural variables of ambient temperature, cloud cover,

5

effect of shade, or amount of time exposed to direct sun light. In fact, the article does nothing more than conclude that darker colored shoes will become hotter than lighter shoes when exposed to sun light.

From this article, his medical education, treatment of patients and review of Davis's medical records, Dr. Schneider posits his opinions. We find that, for the reasons stated below, such opinions are not reliable, and are conclusory and speculative. Further, Dr. Schneider is not qualified to render such opinions.

Analysis

Schneider's opinion regarding causation goes to both the claim for strict liability under products liability causes of action and to the negligence causes of action. In each, Davis must demonstrate that the failure to take certain actions or the taking of some actions on the part of Aetrex was the cause-in-fact of the injuries he suffered. Both producing cause, in the products liability causes of action, and proximate cause, in the negligence causes of action, require proof that Aetrex's acts or omissions were a substantial factor in bringing about the injury suffered and without which the harm would not have occurred. Metro Allied Ins. Agency, Inc. v. Lin, 304 S.W.3d 830, 835 (Tex. 2009). In either circumstance, the failure is the same.

There is no evidence that but for the wearing of black shoes, the injuries suffered by Davis would not have occurred. See Ford Motor Co. v. Ledesma, 242 S.W.3d 32, 46 (Tex. 2007) (applying the but for causation requirement to a products liability case); Sw. Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002) (applying the but for causation requirement to a negligence case). It is clear that Dr. Schneider's opinion

was rendered without any knowledge of the relevant facts surrounding the day Davis suffered his injuries, such as, temperature, cloud cover, or how long Davis's feet were actually exposed to direct sun light. Further, Dr. Schneider failed to provide any testimony regarding the temperature at which he would expect blisters to form on Davis's feet. He did not talk to Davis or any members of his family nor did he treat the wounds. Dr. Schneider simply reviewed the medical records, which reflected that there had been significant blistering of Davis's feet. Dr. Schneider relies heavily on the JAPMA article to fill in the blanks. However, the article in question also has a number of analytical gaps as applicable to this case. Some of these gaps include the failure of the article to correlate the effect of direct exposure to a heat lamp to those of direct exposure to natural sun light, the ambient temperature which would be required to replicate the heat lamp, the mitigating effects of cloud cover or shade, and the amount of time a person would have to be exposed to direct sun light in order for his feet to blister. These are the types of analytical gaps that the Texas Supreme Court discussed in Gammill, 972 S.W.2d at 726. Essentially, what we have is Dr. Schneider testifying that Davis wore black shoes, that black shoes absorb more heat than white shoes, and, therefore, the black shoes caused the blisters. In short, all we have is Dr. Schneider's *ipsi dixit*. Such a gap in the analysis renders his opinion unreliable and speculative. Id. at 728. As such, the trial court did not abuse its discretion in sustaining Aetrex's objections to the testimony of Davis. See Downer, 701 S.W.2d at 241-42.

Davis contends that, even if the trial court was correct in excluding Dr. Schneider's testimony, there was sufficient evidence of causation from the medical records that would preclude the granting of a no-evidence motion for summary

judgment. A review of the medical records that were submitted as summary judgment evidence reflects that they identify the nature of the injury sustained by Davis, and include some naked conclusions about the cause of the burns suffered by Davis. Nothing in these records amounts to any evidence of causation regarding the burns to Davis's feet. As such, this evidence is not sufficient to defeat a no-evidence motion for summary judgment.

Because Davis's causes of action each rely on the causation testimony of his expert, Dr. Schneider, and we have affirmed the trial court's sustaining of objections to that testimony and because the medical records provide no evidence as to causation, we affirm the trial court's granting of Aetrex's motion for summary judgment. Consequently, we do not reach the other issues in Davis's brief. See TEX. R. APP. P. 47.1.

### Conclusion

Because there is no evidence of causation in the record, we affirm the trial court's granting of Aetrex's motion for summary judgment.


Mackey K. Hancock
Justice


8