WITHDRAWN 12/12/13
REISSUED 12/12/13



IN THE
TENTH COURT OF APPEALS

——————————

No. 10-12-00118-CV

KEVIN GLENN SCHRONK, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE
ESTATE OF HELEN PATRICIA SCHRONK,
DECEASED AND DUSTIN SCHRONK,

                                                                Appellants

 v.

LAERDAL MEDICAL CORPORATION,

                                                                Appellee

——————————

From the 413th District Court
Johnson County, Texas
Trial Court No. C200600118

## MEMORANDUM OPINION

In four issues, appellants, Kevin Schronk, individually and as representative of

the estate of Helen Schronk, deceased, and Dustin Schronk, challenge the trial court's

evidentiary decisions and granting of a summary judgment in favor of appellee, Laerdal Medical Corporation.  We affirm.[1]

## I.    BACKGROUND

This is the third time this case has been before this Court.  *See Schronk v. City of Burleson*, 378 S.W.3d 692 (Tex. App.—Waco 2009, pet. filed); *see also In re Schronk*, No. 10-11-00248-CV, 2011 Tex. App. LEXIS 7212 (Tex. App.—Waco Aug. 31, 2011, orig. proceeding) (mem. op.).  As noted in our original opinion pertaining to these facts, appellants filed a wrongful-death lawsuit against the City of Burleson and Laerdal "after emergency medical technicians employed by the City were unable to resuscitate Helen Schronk with an automatic external defibrillator ("AED") manufactured by Laerdal."  *Schronk*, 378 S.W.3d at 697-98.  Appellants alleged that emergency medical technicians made several attempts to administer a defibrillating shock with the AED but could not do so because of a low battery.  *Id.* at 697.  Later, another AED was brought to the scene and additional shocks were administered, but Helen could not be resuscitated. *Id.*  She was pronounced dead on arrival at the hospital.  *Id.*

In their lawsuit, appellants argue that Laerdal is liable "(1) for negligence in the: (a) design, manufacture, marketing, etc. of the AED; (b) training of City employees in the operation and maintenance of the AED; (c) service and maintenance of the AED; and (d) labeling of the AED battery; and (2) for selling an unreasonably dangerous product."  *Id.* at 698.

---

[1] On September 19, 2012, appellants filed a motion to transfer the record in their prior appeal. Based on our disposition, we dismiss this motion as moot.

On original submission, appellants complained about a plea to the jurisdiction granted in favor of the City and a summary judgment granted in Laerdal's favor. *Id.* at 698. Specifically, appellants contended that the trial court erred by, among other things, granting Laerdal's summary-judgment motion "because the motion did not address their product liability claim and genuine issues of material fact remain on their negligence claim."[2] *Id.* We concluded that summary judgment for Laerdal was improper because genuine issues of material fact remained as to whether the AED malfunctioned or was defective; whether the AED was misbranded; and whether the manufacturer's alleged negligence was a proximate cause of Helen's death. *Id.* at 715. Accordingly, this matter was remanded to the trial court for further proceedings. *Id.* at 720.

On remand, Laerdal filed motions to exclude the testimony of Dr. Desser and Dr. Reese based primarily on Texas Rule of Evidence 702. *See* TEX. R. EVID. 702. In particular, Laerdal asserted that Dr. Desser's testimony is unreliable and constitutes unsupported speculation. With regard to Dr. Reese's testimony, Laerdal contended that: (1) Dr. Reese is unqualified to opine as to any defect of the AED or its battery; (2) his opinions are irrelevant with respect to the adequacy of the warnings or labeling of the batteries; (3) his opinions with regard to Laerdal's alleged non-compliance with Federal Drug Administration regulations are irrelevant; and (4) his opinions are unreliable because they are "based on a wholly unsubstantiated assumption that the

---

[2] Relators also raised issues with regard to the City; however, pursuant to an agreed order to dismiss, the City has been dismissed from this action.

wrong battery was returned to Laerdal for testing." On the other hand, Laerdal sought to exclude Dr. Desser's testimony because his testimony: (1) is unreliable and speculative; (2) conflicts with data contained in the American Heart Association's Advanced Cardiac Life Support Manual; and (3) amounts to "a mere *ipse dixit* (emphasis in original)."

The trial court subsequently granted, in two orders, Laerdal's motions to exclude the testimony of both Drs. Desser and Reese.[3] The trial court also denied a summary judgment filed by appellants.

In response to the trial court's ruling, appellants filed a motion for reconsideration and an unopposed motion to stay the matter so that they could file a petition for writ of mandamus in this Court. The trial court denied appellants' motion for reconsideration but granted their motion to stay.

Thereafter, appellants filed a petition for writ of mandamus in this Court, seeking to compel the trial court to vacate its orders excluding the testimony from Drs. Reese and Desser. *See In re Schronk*, 2011 Tex. App. LEXIS 7212, at *1. We denied appellants' mandamus petition, concluding that they have an adequate remedy by appeal by which to challenge the trial court's orders excluding the testimony of Drs. Reese and Desser. *See id.* at **10-11.

---

[3] With regard to Dr. Desser, the trial court excluded portions of his testimony pertaining to causation and the likelihood of Helen's survival. Portions of Dr. Reese's testimony pertaining to "the issues of alleged negligence of Laerdal Medical Corporation with respect to the design, labeling, and manufacturing of the AED and/or batteries, or any alleged violations of FDA regulations" were excluded by the trial court.

Following the denial of appellants' mandamus petition, Laerdal moved for summary judgment on no-evidence grounds. Specifically, Laerdal asserted that it is entitled to summary judgment because the trial court excluded Dr. Desser's testimony and because appellants did not proffer expert testimony establishing that, but for the alleged failure of the AED, Helen would have survived the heart attack. The trial court granted Laerdal's summary-judgment motion and ordered that appellants take nothing from Laerdal.

A couple of months later, appellants filed a second motion to reconsider, requesting that the trial court reconsider the exclusion of testimony of appellants' expert witnesses and its rulings on a motion for continuance and Laerdal's no-evidence motion for summary judgment. In response, Laerdal moved for a final judgment, which the trial court signed on January 18, 2012. In its final judgment, the trial court granted summary judgment in favor of Laerdal and ordered that appellants take nothing in this action.

Undeterred, appellants filed a motion for new trial, which was denied by the trial court on February 22, 2012. This appeal followed.

## II.    STANDARD OF REVIEW

In this appeal, appellants challenge not only the summary judgment granted in favor of Laerdal but also several intermediate rulings made by the trial court. Because the trial court's summary judgment is premised upon on the intermediate rulings made—chiefly, the decision to exclude the testimony of both Drs. Desser and Reese, we will recite the standard of review for no-evidence motions for summary judgment.

The function of a summary judgment is to eliminate patently unmeritorious claims and untenable defenses, not to deprive litigants of the right to a trial by jury. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). We review the grant or denial of a summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 194, 192, 199 (Tex. 2007); *see also Provident Life & Accident Ins. Co.*, 128 S.W.3d 211, 215 (Tex. 2003). If the trial court's order granting summary judgment does not specify the ground or grounds relied upon for the ruling, we will affirm the judgment on appeal if any of the theories advanced by the movant are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Here, Laerdal filed a no-evidence motion for summary judgment. We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). After an adequate time for discovery has passed, a party without the burden of proof at trial may move for summary judgment on the ground that the nonmoving party lacks supporting evidence for one or more essential elements of its claim. *See* TEX. R. CIV. P. 166a(i); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 682-83 (Tex. App.—Dallas 2000, no pet.). Once a no-evidence motion for summary judgment has been filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006). The trial court should not grant a no-evidence motion for summary judgment if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged

element.  *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).  More than a scintilla of evidence exists if the evidence would enable reasonable and fair-minded jurors to differ in their conclusions.  *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam); *Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (noting that less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983))).  We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.  *Tamez*, 206 S.W.3d at 581-82; *King Ranch, Inc.*, 118 S.W.3d at 750.

### III.    EXCLUDING EXPERT WITNESS TESTIMONY

In their first two issues, appellants challenge the trial court's order excluding the testimony of Drs. Desser and Reese.  Specifically, appellants assert that the trial court abused its discretion in excluding the expert testimony because:  (1) Dr. Desser's opinion that Helen would have survived if the AED had not malfunctioned is reliable; and (2) Dr. Reese is qualified to render opinions on marketing defects in the AED and its batteries, and his opinions are relevant and reliable.

### A.    Applicable Law

The trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion.  *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998).  "The test for abuse of discretion is whether the trial court acted without reference

to any guiding rules or principles." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003).

An expert witness may testify regarding scientific, technical, or other specialized matters if the expert is qualified, the expert's opinion is relevant, the opinion is reliable, and the opinion is based on a reliable foundation. *See* TEX. R. EVID. 702; *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009). To be relevant, the expert's opinion must be based on the facts; to be reliable, the opinion must be based on sound reasoning and methodology. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Opinion testimony that is conclusory or speculative is not relevant evidence because it does not tend to make the existence of a material fact more probable or less probable. *See* TEX. R. EVID. 401; *City of San Antonio v. Pollock*, 284 S.W.3d 809, 815 (Tex. 2009). Expert testimony is unreliable if it is no more than subjective belief or unsupported speculation. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002). Further, unreliable expert testimony is not relevant evidence and, therefore, constitutes no evidence. *Hughes*, 306 S.W.3d at 234; *see Gross v. Burt*, 149 S.W.3d 213, 237 (Tex. App.—Fort Worth 2004, pet. denied).

## B.    Dr. Desser's Testimony

Appellants designated Dr. Desser to testify that: (1) "To a reasonable degree of medical probability exceeding 51%, Mrs. Schronk would have been successfully defibrillated had the Laerdal Heartstart 911 automatic electrical defibrillator functioned

appropriately"; and (2) "This case is classified as a wrongful and preventable death." In other words, appellant called upon Dr. Desser to testify regarding causation.

The general rule is that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). To establish causation in a personal-injury case, a plaintiff must prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). To constitute evidence of causation, an expert opinion must rest in reasonable medical probability. *Id.* at 500. Reasonable probability is determined by the substance and context of the opinion, and does not turn on semantics or on the use of a particular term or phrase. *Id.* Furthermore, "reasonable medical probability" or "reasonable probability" means "that it is 'more likely than not' that the ultimate harm or condition resulted from [the negligence of one or more defendants]." *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399-400 (Tex. 1993) (quoting *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 707 (Tex. 1970)).

In determining whether expert testimony is reliable, a reviewing court must employ "'an almost *de novo*-like review and, like the trial court, look beyond the expert's bare testimony to determine the reliability of the theory underlying it.'" *Gross*, 149 S.W.3d at 237 (quoting *Austin v. Kerr-McGee Refining Corp.*, 25 S.W.3d 280, 285 (Tex. App.—Texarkana 2000, no pet.) (emphasis in original)). "An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.

1999) (emphasis in original). In assessing the admissibility of expert testimony, we do not focus on the correctness of the expert's opinion, but on the reliability of the analysis the expert used in reaching his or her conclusions. *Gross*, 149 S.W.3d at 237.

The Texas Supreme Court has articulated six non-exclusive factors appellate courts should consider in determining whether scientific testimony is reliable:

(1) The extent to which the theory has been or can be tested;

(2) The extent to which the technique relies upon subjective interpretations of the expert;

(3) Whether the theory has been subjected to peer review and publication;

(4) The technique's potential rate of error;

(5) Whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and

(6) The non-judicial uses that have been made of the theory or technique.

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997); *see Robinson*, 923 S.W.2d at 557. However, the approach to assessing reliability must be flexible depending on the nature of the evidence. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 216 (Tex. 2010). One additional factor that has been held to be of particular significance is whether the expert has ruled out other likely causes within a reasonable degree of medical probability. *See id.* at 217-18.

In his deposition testimony, Dr. Desser opined that there was an "excellent" chance that Helen would have survived had the AED administered a successful defibrillation. He later clarified that, in reasonable medical probability, Helen would have had a greater than fifty percent chance of survival had the AED worked at the time

the Burleson Fire Department arrived.  However, Dr. Desser later recognized that there is no assurance that Helen would have been discharged from the hospital alive.  In fact, Dr. Desser agreed with the following passages from a document produced by Milton Henry Anderson III, M.D.:

> [B]ut it is my opinion that she more likely than not was in ventricular fibrillation before the time the rhythm was recognized by the AED.  We will never know for certain just at what time the ventricular rhythm did start.
>
> . . . .
>
> It is also known that any patient who is successfully defibrillated from ventricular fibrillation will face an uphill battle in eventually leaving the hospital where they are to be transported and hopefully treated for the underlying cause, if possible, for their ventricular fibrillation and underlying heart disease.  It is clear to cardiologists and practitioners of internal medicine that receiving such a patient into the hospital is no assurance that the patient will eventually be discharged alive.

Dr. Desser also submitted a written report, wherein he explained the documents he reviewed in arriving at his opinion that, to a reasonable degree of medical probability exceeding 51%, Helen would have been successfully defibrillated had the AED functioned properly.  In a section entitled, "FOUNDATION FOR OPINIONS," Dr. Desser stated:

> The 10% increment of ventricular fibrillation mortality per minute without electrical defibrillation statistic applies to subjects who are not undergoing cardiopulmonary resuscitation by a bystander who is trained in the technique.  Given a 6 minute delay from cardiac arrest to attempted electrical defibrillation for Patricia Schronk[,] the mortality rate would have been approximately 60%.  In Mrs. Schronk's case, however, the performance of cardiopulmonary resuscitation during the 6 minute delay would, to a reasonable degree of medical probability, have increased her chance of successful electrical defibrillation and survival to over 51%.  This is a conservative estimate since success rates for non-physician

> bystanders who are trained in cardiopulmonary resuscitation in combination with electrical defibrillation has a success rate which exceeds 80%. This statistic is based on data which has been accumulated from free-standing cardiac rehabilitation units where cardiac arrests have occurred in subjects with serious cardiovascular disorders. Additionally, non-medical environments with access to Emergency Medical Technicians and defibrillators have cardiac arrest survival rates which are even higher.

Though Dr. Desser references data obtained from "free-standing cardiac rehabilitation units" and other sources and reports, such information was not included with Dr. Desser's report for purposes of corroboration. *See Gross*, 149 S.W.3d at 238 ("Thus, regardless of whether the *Robinson* factors are applied, the proponent of the expert testimony must prove that it is based upon a reliable foundation." (citing *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 319 (Tex. App.—San Antonio 2002, pet. denied) (op. on reh'g))); *see also Robinson*, 923 S.W.2d at 556 (noting that "an expert scientific opinion must be grounded, at the very least, on some demonstrable underlying scientific data or logical inferences therefrom"). Without this information, a reviewing court cannot accurately assess the reliability of Dr. Desser's theories. *See Havner*, 953 S.W.2d at 714; *Crump*, 330 S.W.3d at 216; *see also Gross*, 149 S.W.3d at 237; *Austin*, 25 S.W.3d at 285. Instead, we would be left to simply take Dr. Desser's word for the theories espoused in his testimony and report—something we cannot do. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam) (noting that a causation finding cannot be supported by "mere conjecture, guess, or speculation"); *see also Earle*, 998 S.W.2d at 890.

Furthermore, Dr. Desser recognized that reports produced by the American Heart Association ("AHA") command respect. Included in the record is the AHA's

Advanced Cardiac Life Support Manual, wherein Part 4 addresses the effect of the collapse-to-CPR interval and the collapse-to-defibrillation interval on survival to hospital discharge. The manual indicates that, based on a sample size of 1,667 people from King County, Washington and 205 people from Tucson, Arizona, Helen's likelihood of survival was well below 50%, even if she had received a shock from the AED and continuous CPR before attempted defibrillation. In fact, if we were to accept as true appellants' assertions that Kevin immediately administered continuous CPR to Helen and that the time interval between the dispatch of the Burleson Fire Department and its arrival was six minutes and forty-seven seconds, the manual demonstrates that Helen's probability of survival would have been below 40%. Thus, to the extent that it can be tested, Dr. Desser's theory appears to be undermined by the AMA's manual. *See Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870; *see also Havner*, 953 S.W.2d at 714.

And finally, Dr. Desser acknowledged in his deposition testimony that admitting a patient in Helen's condition into the hospital is no assurance that the patient will eventually be discharged alive. *See Natural Gas Pipeline Co. of Am. v. Justiss*, ___ S.W.3d ___, 2012 Tex. LEXIS 1054, at *15 n.5 (Tex. Dec. 14, 2012) (defining "speculation" as "[t]he act or practice of theorizing about matters over which there is no certain knowledge" (quoting BLACK'S LAW DICTIONARY 1529 (9th ed. 2009))). Thus, even if the AED had not malfunctioned, there is no assurance that Helen would have survived this incident—a conclusion that is supported by the AMA's manual. *See Kramer*, 858 S.W.2d at 399-400 (stating that "reasonable medical probability" means "that it is more likely

than not that the ultimate harm or condition resulted from [the negligence of one or more defendants]"; *Lenger*, 455 S.W.2d at 707.

The Texas Supreme Court has noted that "although expert opinion testimony often provides valuable evidence in a case, 'it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.'" *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231-32 (Tex. 2004) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)). Moreover, "'[i]f an expert 'br[ings] to court little more than his credentials and a subjective opinion,' his testimony will not support a judgment." *Justiss*, 2012 Tex. LEXIS 1054, at *14 (quoting *Havner*, 953 S.W.2d at 712).

Here, Dr. Desser brought to court "little more than his credentials and a subjective opinion." *Id.* Therefore, based on our review of the record, we hold that Dr. Desser's deposition testimony and accompanying report are conclusory and lack the indicia of reliability required by *Havner*. *See* 953 S.W.2d at 714. Accordingly, we conclude that Dr. Desser's deposition testimony and accompanying report do not constitute admissible evidence, *see Justiss*, 2012 Tex. LEXIS 1054, at *16; thus, we cannot say that the trial court abused its discretion. *See Gammill*, 972 S.W.2d at 718. We overrule appellants' first issue.

## C. Dr. Reese's Qualifications

In their second issue, appellants contend that the trial court abused its discretion in excluding Dr. Reese's deposition testimony regarding allegations of negligence and

strict liability against Laerdal. In particular, appellants argue that Dr. Reese is qualified to opine about marketing defects in the AED and its batteries based on his experience, knowledge, and education. In addition, appellants assert that Dr. Reese's testimony is relevant and reliable.

As noted earlier, rule 702 of the Texas Rules of Evidence permits a witness qualified as an expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact in issue. TEX. R. EVID. 702. Whether a witness is qualified as an expert is a preliminary question for the trial court to determine. *Id.* at R. 104(a); *see Gammill*, 972 S.W.2d at 718. The burden of proving an expert's qualifications is on the offering party. *Yard v. DaimlerChrysler Corp.*, 44 S.W.3d 238, 241 (Tex. App.—Fort Worth 2001, no pet.) (citing *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996)). Further, an offering party must demonstrate that the proposed expert witness possesses expertise concerning the actual subject about which they are offering an opinion. *Gammill*, 972 S.W.2d at 718.

In their designation of experts, appellants stated that Dr. Reese "is expected to testify concerning his qualifications, education, training and experience as an expert in the field of medical devices. Dr. Reese is expected to testify generally about the failure of the medical device causing the incident made the basis of this lawsuit." Specifically, with regard to Laerdal, appellants noted that: "Dr. Reese is expected to testify that Laerdal was negligent in its design, labeling and manufacturing of the AED and[/]or batteries, and that Laerdal was in violation of relevant FDA regulations."

In his deposition testimony, Dr. Reese stated that he has Bachelor's and Master's degrees in management and a "unique" Doctorate in the field of medical-technology studies from "Union Graduate School and University."[4] Dr. Reese opined that his Doctoral degree focused on the relationship between the medical industry and Food and Drug Administration regulations. Dr. Reese recounted that he worked as Director of Technical Services for a company called Medtronic, Inc. from 1971 to 1980. He also testified that he independently studied for and passed an exam to become a member of the Society of Manufacturing Engineers. However, he acknowledged that he is not a registered professional engineer, licensed by the Minnesota Board of Engineers, or an expert in various engineering areas, such as metallurgy, electrical, physics, and mechanical engineering. Dr. Reese admitted that he is not a medical doctor, is not certified in emergency medicine, and is not an expert in cardiopulmonary resuscitation or defibrillation. In addition, Dr. Reese stated that he has never been employed by a firm that manufactures AEDs or batteries; he has never designed or developed an AED or battery; he has never formulated warnings applicable to the operation of an AED; he has never published any articles on the design or use of AEDs; and he has never received training or actually used an AED. He did, however, note that he has "done a

---

[4] In the deposition of Dr. Reese and on appeal, appellee's counsel referenced the Eight Circuit Court of Appeals' decision in *Krueger v. Johnson & Johnson Prof'l, Inc.*, Civil No. 4-00-cv-10032, 2002 U.S. Dist. LEXIS 25943 (S.D. Iowa 2002), *aff'd*, No. 02-3553, 2003 U.S. App. LEXIS 9779 (8th Cir. 2003). In *Krueger*, Dr. Reese was called as an expert witness—"a self-described 'regulatory affairs expert, FDA rules and regulations expert.'" *Id.* at *3. With regard to questions about the "uniqueness" of his Doctoral program, Dr. Reese stated that the program was self-study; that it did not have significant course work; and that he did not know of any other student who received a Ph.D. in medical technology from that school. *Id.* at *5. Ultimately, the *Krueger* Court concluded that Dr. Reese was not qualified to testify as an expert as to alleged design, manufacturing, or labeling defects in a Codman Plate System that allegedly caused the plaintiff's injuries. *Id.* at **14-16.

large number of implantable devices with defibrillators, and I have done some external defibrillator cases, two or three." He later testified: "I'm not a battery expert." And finally, Dr. Reese admitted that he neither examined nor tested the subject AED or battery used during Helen's code call and that he neither examined nor tested any exemplar HeartStart 911 AEDs or batteries. In fact, Dr. Reese testified that he has no facts or evidence that the subject AED or battery was not fully functional if an operational power source accompanied the device at the time of the emergency call.[5]

Given that Dr. Reese did not test the actual device or battery involved in this case and that he did not express, in his deposition testimony, specific expertise regarding AEDs and batteries, we do not believe that Dr. Reese was qualified to opine regarding the alleged marketing or design defects in the AED or its battery involved in this case— both of which were Laerdal products. *See* TEX. R. EVID. 702; *see also Gammill*, 972 S.W.2d at 718; *Broders*, 924 S.W.2d at 151; *Yard*, 44 S.W.3d at 241. Accordingly, we cannot say that the trial court abused its discretion by excluding Dr. Reese's testimony regarding alleged marketing or design defects in the AED or its battery. *See Gammill*, 972 S.W.2d at 718. As such, we overrule appellants' second issue.[6]

---

[5] We recognize that Dr. Reese also executed an affidavit wherein he stated that he has thirty-eight years' experience involving the design, development, labeling, manufacture, quality control, and regulatory compliance of medical devices and that he is an "expert in the areas of medical devices, the medical device industry, Labeling, Food and Drug Administration (FDA), Rules and Regulations, wherein I have professional and academic knowledge." However, despite these assertions, Dr. Reese's deposition testimony, especially with respect to AEDs and accompanying batteries, does not demonstrate that he is qualified as an expert on the issues in this matter.

[6] Because we have concluded that Dr. Reese was not qualified to testify as an expert regarding the alleged marketing and design defects in the AED and its battery, we need not address appellants' sub-issues regarding the relevancy and reliability of Dr. Reese's deposition testimony. *See* TEX. R. APP. P. 47.1.

## IV. EXPERT WITNESS DESIGNATION DEADLINE

In their third issue, appellants contend that the trial court abused its discretion by refusing to extend the expert designation deadline and to delay ruling on Laerdal's summary-judgment motion so that they could designate new expert witnesses. Specifically, appellants argue that they were surprised that the trial court excluded the testimony of both Drs. Desser and Reese three-and-a-half years after the expert designation deadline passed and less than two weeks before trial. Appellants assert that the trial court's exclusion of the testimony of Drs. Desser and Reese and our denial of their mandamus petition left them without expert testimony needed to prove medical causation as an essential element of their wrongful death claim.

The trial court's control over pre-trial activities is discretionary. *See* TEX. R. CIV. P. 166. Designation of expert witnesses is a critical part of the pre-trial discovery process. *See Loffland Bros. Co. v. Downey*, 822 S.W.2d 249, 250-51 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). The crux of appellants' issue pertains to the trial court's refusal to continue the matter so that new expert witnesses could be designated.

Texas Rule of Civil Procedure 166a(i) provides that, after an adequate time for discovery, a party may move for no-evidence summary judgment. TEX. R. CIV. P. 166a(i); *see Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, he must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). Filing a verified motion

for continuance preserves the party's objection to the summary judgment. *See Tempay, Inc. v. TNT Concrete & Constr., Inc.*, 37 S.W.3d 517, 521 (Tex. App.—Austin 2001, pet. denied). An order granting a motion for summary judgment impliedly denies the opposing party's motion for continuance. *See West v. SMG*, 318 S.W.3d 430, 436 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 114 (Tex. App.—Waco 1999, no pet.). We review questions of whether the trial court erroneously denied a motion for continuance and of whether the trial court's rendition of summary judgment was improper because an adequate time of discovery had not yet passed for an abuse of discretion. *See Carter v. MacFadyen*, 93 S.W.3d 307, 310-11 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *see also Spencer v. GC Servs., L.P.*, No. 01-12-00159-CV, 2013 Tex. App. LEXIS 5562, at **14-15 (Tex. App.—Houston [1st Dist.] May 7, 2013, no pet. h.) (mem. op.).

Rule 166a(i) does not require that discovery be completed before a party may move for no-evidence summary judgment; instead, such a motion may be granted after "adequate time" for discovery has passed. *See Madison v. Williamson*, 241 S.W.3d 145, 155 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also In re Mohawk Rubber Co.*, 982 S.W.2d 494, 498 (Tex. App.—Texarkana 1998, orig. proceeding). Whether a nonmovant has had adequate time for discovery under rule 166a(i) is case specific. *Teams Int'l, Inc. v. MG Secs. Corp.*, 95 S.W.3d 336, 339 (Tex. App.—Dallas 2002, no pet.); *McClure v. Attebury*, 20 S.W.3d 722, 729 (Tex. App.—Amarillo 1999, no pet.). In determining whether an adequate time for discovery has elapsed, we consider: (1) the nature of the cause of action; (2) the nature of the evidence necessary to controvert the

no-evidence motion; (3) the length of time the case has been active in the trial court; (4) the amount of time the no-evidence motion has been on file; (5) whether the movant has requested stricter time deadlines for discovery; (6) the amount of discovery that has already taken place; and (7) whether the discovery deadlines that are in place are specific or vague. *Madison*, 241 S.W.3d at 155; *Fuqua*, 29 S.W.3d at 145; *see Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (considering the following non-exclusive factors when deciding whether the trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery: length of time the case has been on file; materiality and purpose of discovery sought; and whether the party seeking the continuance exercised due diligence to obtain the discovery sought).

In addressing this issue, we must closely examine the chronology of events that transpired after the trial court excluded the complained-of expert testimony.

- On December 7, 2007, appellant's designated their experts per the trial court's scheduling order.

- On April 22, 2011, the trial court granted Laerdal's motion to exclude the testimony of Dr. Reese.

- On April 28, 2011, the trial court excluded Dr. Desser's testimony.

- On May 3, 2011, appellants filed a motion to stay this proceeding pending their filing of a petition for writ of mandamus in this Court, which the trial court granted.

- Also on May 3, 2011, appellants moved the trial court to reconsider its April 22, 2011 ruling, which was ultimately denied.

- On July 25, 2011, appellants filed their mandamus petition in this Court.

- On August 31, 2011, this Court issued its opinion on appellants' mandamus petition.

- On September 30, 2011, Laerdal filed its no-evidence motion for summary judgment.

- On December 2, 2011, the trial court granted Laerdal's summary-judgment motion.

- On December 7, 2011, appellants filed a second motion to reconsider the exclusion of Drs. Desser and Reese's testimony and an accompanying motion for continuance.

- On January 18, 2012, the trial court signed its final judgment granting summary judgment in favor of Laerdal.

The incident in this case transpired on February 26, 2004, and the record indicates that this case has been on file for many years. Moreover, in their motion for continuance, appellants did not identify specific experts or discovery that they sought. Instead, they generally stated that the expert-designation deadline should be extended "so that Plaintiffs may have an opportunity to seek out an additional qualified expert(s) on the existence of defects in the AED and causation of injury by the defect." Appellants' request for a continuance is predicated on their surprise that the trial court excluded Drs. Desser and Reese's testimony "less than two weeks before trial." However, the above chronology shows that approximately eight months elapsed between the trial court's exclusion of the testimony of both Drs. Desser and Reese and its final judgment. In addition, approximately three-and-a-half months passed between Laerdal's filing of its no-evidence summary judgment and the trial court's final judgment. Neither on appeal nor in their motion do appellants explain that they exercised due diligence in obtaining the additional discovery needed. *See* TEX. R. CIV. P.

252; *see also Risner v. McDonald's Corp.*, 18 S.W.3d 903, 909 (Tex. App.—Beaumont 2000, pet. denied). In fact, any due diligence argument is likely undermined by the amount of time that passed between the exclusion of the expert testimony and the trial court's final judgment.

Furthermore, there is no indication that Laerdal sought stricter discovery deadlines, especially after the trial court excluded the testimony of Drs. Desser and Reese. And in their motion and brief, appellants do not adequately address the elements in *Madison*, *Fuqua*, and *Two Thirty Nine Joint Venture*. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 161; *see also Madison*, 241 S.W.3d at 155; *Fuqua*, 29 S.W.3d at 145. Finally, it is noteworthy to mention that appellants first presented their motion for continuance after the trial court had already ruled upon Laerdal's motion for summary judgment.

Based on the foregoing, we conclude that appellants have failed to demonstrate that the trial court abused its discretion in implicitly denying appellants' motion for continuance and ruling on the merits of Laerdal's summary-judgment motion. *See Madison*, 241 S.W.3d at 155 (considering the fact that appellant "made no effort to specify the additional evidence she needed to respond to the motion, or the reason she could not obtain it during the discovery period" when determining whether appellant had an adequate time for discovery); *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.) ("[A]ppellant has made no effort to discuss any of the relevant factors. She does not state how much time she had for discovery, what discovery was completed, what further discovery was needed or otherwise argue

why the time was not adequate.  We will not make appellant's arguments for her."); *see also Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("[T]he appellant bears the burden to establish error in the trial court's judgment.").  Accordingly, we overrule appellants' third issue.

## V.    LAERDAL'S MOTION FOR SUMMARY JUDGMENT

In their fourth issue, appellants argue that the trial court erred in granting summary judgment in favor of Laerdal.  In particular, this issue is premised on a finding that the trial court abused its discretion in excluding the testimony of both Drs. Desser and Reese—a contention that we have rejected.  Appellants admit that expert medical witness testimony was required to establish causation and that, other than Dr. Desser, appellants did not have another expert medical witness to opine as to causation. *See Ferrer*, 247 S.W.3d at 665 ("The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors."); *see also W. Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (stating that, in a negligence claim, an essential element is causal connection between the alleged breach of the duty of care and the alleged injury); *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex. 1988) (noting that, in a strict liability product claim, proof of a causal link between a product defect and the user's injury is an essential element).  Therefore, based on these admissions and our conclusion that the trial court did not err in excluding the testimony of Drs. Desser and Reese, we cannot conclude that the trial court erred in granting summary judgment in favor of Laerdal.

*See Tamez*, 206 S.W.3d at 581-82; *see also King Ranch, Inc.*, 118 S.W.3d at 750.  We overrule appellants' fourth issue.

## VI.    CONCLUSION

Having overruled all of appellants' issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed August 8, 2013
[CV06]