**CHICO AUTO PARTS & SERVICE, INC., Appellant,**

v.

**Craig M. CROCKETT, Appellee.**

No. 08–15–00021–CV

Court of Appeals of Texas, El Paso.

January 18, 2017

Review Denied May 5, 2017

Thomas M. McMurray, McMurray Law Firm, Denton, TX, for Appellee.

Harvey G. Joseph, Law Offices of Harvey G. Joseph, Dallas, TX, Bob J. Shelton, Bob J. Shelton, P.C., Arlington, TX, for Appellant.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## OPINION

ANN CRAWFORD McCLURE, Chief Justice

Chico Auto Parts & Service, Inc. appeals from an order granting summary judg-

ment in favor of Craig Crockett on its claims for breach of contract, quantum meruit, and fraud, in which Chico sought to be reimbursed for cleaning up a well site. Chico contends the trial court erred in granting Crockett's motion for traditional summary judgment, because Crockett failed to meet his initial burden to negate an essential element on each of its three causes of action. Chico also contends the trial court abused its discretion in denying its motion for a continuance, because it was entitled to conduct additional discovery prior to the summary judgment hearing. We affirm.[1]

## BACKGROUND

Chico is a corporation that provides, among other things, hazardous material remediation services. Crockett is the managing member of Black Strata, a Limited Liability Company, which was the operator of an oil well known as the Maxey I Well, located in Tarrant County. After Black Strata had completed drilling the Well in May 2011, the Texas Railroad Commission received a complaint alleging that "produced" water was leaking from the Well into a drilling pit at the well site. After an inspection confirmed the leak, the Railroad Commission notified Black Strata, as the operator of the Well, to remediate the drilling pit by July 25, 2011.

There is no dispute that Chico performed the remediation services on the Well. There is a dispute, however, concerning exactly who contracted with Chico for its remediation services. The record is barren of any written agreement or any written correspondence between the parties leading up to Chico's performance of the remediation services. The record does contain an invoice dated July 27, 2011, seeking $63,415.55 in compensation, which Chico sent to Montcrest Energy Inc., one of the part-owners of the oil and gas interests in the Well. At the time, Crockett was the president and CEO of Montcrest, as well as a part-owner in the oil and gas interests in the Well.

The record also contains two checks for $10,000 each, dated October and December 2011, which were written to Chico on Black Strata's bank account, presumably in response to the invoice. Chico apparently received no additional payments from either Montcrest or Black Strata, and on April 12, 2012, Chico's attorney sent a demand letter to Crockett, as the managing member of Black Strata, demanding that Black Strata remit the remaining balance of $43,415.55 or face a possible lawsuit.

### The First Lawsuit

In May 2012, Chico sued Montcrest for breach of contract and quantum meruit, seeking the remaining amounts owed to Chico for its services. Chico alleged that it had responded to a request from an unidentified individual or entity to perform the work, but never elaborated on the circumstances surrounding the request. No discovery was conducted in that lawsuit, and on January 11, 2012, the trial court entered an agreed judgment against Montcrest for $43,415.55, plus attorney's fees. Shortly thereafter, Montcrest filed for bankruptcy without making any payments to Chico under the agreed judgment. It appears that Crockett then resigned as president and CEO of Montcrest. In 2013, Chico filed a claim against Montcrest in bankruptcy court based on the agreed judgment. The record does not show whether that claim has been resolved.

---

1. This appeal was transferred from the Fort Worth Court of Appeals pursuant to a docket equalization order. We apply the precedent of that Court to the extent required by Tex. R. App. P. 41.3.

## The Current Lawsuit

In December 2013, Chico filed the current lawsuit, naming Black Strata and Crockett as defendants, together with Mary Maxey, who owns a fee simple interest in the land on which the Well is located as well as a royalty interest in the Well's production. Chico raised the same claims that it did in its first lawsuit for breach of contract and quantum meruit, alleging that all three defendants were jointly and severally liable with Montcrest on those claims. Chico also raised a new claim for fraud against Black Strata and Crockett. Chico alleged Black Strata and Crockett misrepresented to Chico that Montcrest was the operator of the Well and failed to disclose that Black Strata was the "permitted operator" of the well, and claimed that it "relied on said representations to its detriment in its billing process by invoicing Montcrest Energy, Inc. for the clean up as ordered by the [Railroad Commission]."

## The Motion for Summary Judgment

Black Strata and Crockett (collectively "Defendants") filed a joint motion for traditional summary judgment on all of Chico's claims. They contended Chico was barred from bringing the current lawsuit, based on the affirmative defenses of res judicata, collateral estoppel, and judicial estoppel, in light of Chico's first lawsuit and judgment against Montcrest seeking recovery for the same services and same debt. Defendants also argued Chico had made judicial admissions in the first lawsuit, as well as in bankruptcy court, acknowledging that Montcrest was the entity responsible for paying the debt owed to Chico for its services.

With regard to Chico's claims for breach of contract and quantum meruit, Defendants also contended the evidence demonstrated that any agreement to perform cleanup services was with Montcrest, and

that Chico had no evidence that either Black Strata or Crockett had agreed to pay Chico for its services. Defendants pointed out that before it sued them, Chico had treated Montcrest as the contracting party, sending Montcrest invoices, naming Montcrest in the first lawsuit, and filing a claim against Montcrest in bankruptcy court. With regard to the fraud claim, Defendants asserted that Chico's factual allegations, even if accepted as true, would not support a finding of fraud. Crockett argued that he could not be held personally liable on Chico's claims, because any actions he had taken were made in his capacity as the managing member of Black Strata, an LLC, thereby shielding him from liability under the Texas Business Organizations Code.

In response, Chico contended Montcrest, Black Strata, and Crockett (as well as Maxey) could all be held jointly and severally liable for the debt owed to Chico, because they were all responsible parties for the cleanup ordered by the Railroad Commission, as either owners or operators of the Well. Chico argued that because of the joint and several liability, it had "the option of proceeding to judgment against any one defendant separately or against all of the defendants in one suit." Chico also contended that because it been "falsely told" that Montcrest was the "true" operator or owner of the Well, and because the "true operator and other owners were not disclosed to Chico" before it filed its lawsuit against Montcrest, the doctrines of collateral estoppel and res judicata should not be applied to bar it from suing Black Strata and Crockett.

In reply, Defendants pointed out that Chico had addressed only one issue in its response—whether Chico's lawsuit against Montcrest barred it from filing the current lawsuit—and had failed to address whether Defendants had entered into any agree-

ment with Chico, whether the fraud claim was valid, and whether Crockett could be held personally liable for actions taken on behalf of Black Strata as its managing member.

Three days before the summary judgment hearing, Chico filed a motion for a continuance, claiming that it had not been given sufficient time to conduct discovery in order to adequately respond to the motion. Following the hearing, the trial court denied Chico's motion for a continuance, and granted the motion for summary judgment with regard to all of Crockett's claims.[2] The trial court cited several grounds for its decision in its written order, including that: (1) there was no privity of contract between Chico and the Defendants; (2) the lawsuit was barred by collateral estoppel and judicial estoppel; and (3) Crockett was immune from liability under the Texas Business Organizations Code.

## DISCUSSION

### Standard of Review

■ We review a trial court's order granting summary judgment de novo. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). Traditional summary judgment is proper when the movant establishes that no genuine issues of material fact exist, and that the movant is entitled to judgment as a matter of law. *BCCA Appeal Group, Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016). To be entitled to summary judgment, a defendant must conclusively negate at least one essential ele-

ment of each the plaintiff's causes of action or establish all elements of an affirmative defense as a matter of law. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

■ Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden then shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue as to each challenged element of the plaintiff's claim or one element of the defendant's affirmative defense. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). If the movant does not satisfy its initial burden, however, the burden does not shift, and the non-movant need not respond or present any evidence. *Id.* at 511–12; *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993) ("the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right" to judgment).

We review the summary judgment evidence in the light most favorable to the non-movant, "crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

### The Trial Court Properly Granted Summary Judgment on Chico's Breach of Contract Claim

In Issue Four,[3] Chico argues the trial court erred in granting summary judg-

---

**2.** The trial court initially dismissed all of Chico's claims against Black Strata as well. However, the trial court subsequently modified its judgment, allowing Chico to pursue its quantum meruit claim against Black Strata. The trial court also granted Crockett's motion to sever, making the summary judgment order final and appealable as to him.

**3.** Chico's first three issues address whether its lawsuit was barred by res judicata, collateral estoppel, and judicial estoppel. In light of our holding on Chico's other issues, it is unnecessary to address Chico's first three issues in our opinion. *See* Tex. R. App. P. 47.1 (court of appeals is required to address only those is-

ment on its breach of contract claim, contending Crockett did not come forward with any evidence to negate an essential element of that claim. Chico contends that because Crockett filed a traditional motion for summary judgment, the burden never shifted to Chico to come forward with any evidence to support its claim for breach of contract. We conclude the evidence established that Crockett was not a party to the remediation contract, and that Chico failed to come forward with any controverting evidence to establish that Crockett was liable as a party to the contract.

### Analysis

Chico's pleadings fail to clarify whether it intended to sue Crockett for breach of contract in his capacity as the managing member of Black Strata or in his personal capacity as an owner of the Well. It was only in his motion for new trial that Chico specifically argued for the first time that Crockett was personally responsible for the remediation services on both grounds, claiming that he was responsible for the cleanup of the Well under the Texas Natural Resources Code as an owner of the Well, as well as in his capacity as the managing member or president of Black Strata and Montcrest. We conclude Crockett could not be held personally liable in either of those capacities.

### Crockett was not in Privity of Contract as a Co–Owner of the Well

■■■ Except for third-party beneficiary status, which is not alleged here, in order to maintain an action to recover for breach of contract, privity must exist be-

tween the party damaged and the party sought to be held liable. *See Rolen v. LVNV Funding, LLC,* No. 02–09–00304–CV, 2010 WL 1633402, at **1–2 (Tex.App.–Fort Worth Apr. 22, 2010, no pet.) (mem. op., not designated for publication) (a party must prove its privity to an agreement to establish standing to assert a breach of contract cause of action); *Schambacher v. R.E.I. Elec., Inc.,* No. 02–09–00345–CV, 2010 WL 3075703, at *3 (Tex.App.–Fort Worth Aug. 5, 2010, no pet.) (mem. op., not designated for publication) ("Privity of contract is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff.").

Chico never identified which of the three defendants it believed it was in privity with, and even at the summary judgment hearing, Chico's attorney stated that Chico was not certain who the contracting party was. However, Chico's pleadings show Chico intended to name Black Strata as the contracting party, and not Crockett in his individual capacity as an owner of the Well.[4] More importantly, in support of the motion for summary judgment, Defendants attached Chico's response to their request for disclosures, in which Chico stated that its claims against the Defendants were based on the theory that the cleanup was "ordered by agents for Black Strata, LLC," with no mention that Crockett ordered the cleanup in his individual capacity as a Well owner. Despite being confronted with its own discovery responses indicating that Crockett's involvement was at most as an "agent" of Black Strata,

sues necessary to final disposition of the appeal).

4. Chico alleged that a "Defendant" paid Chico $20,000 on its account, referencing the two checks that Black Strata sent to Chico in response to its invoice, and that Crockett as

its CEO was responsible for directing Black Strata to remit those two checks to Chico. Chico's Petition also references its demand letter to Black Strata, which was addressed to Crockett as the "managing member" of Black Strata.

Chico failed to respond with any controverting evidence that Crockett was also a party to the contract in his individual capacity as a Well owner. We therefore conclude the record establishes that the contract, if any, was with Black Strata, and that if Crockett negotiated the contract, it was in his capacity as the managing member of Black Strata, rather than in his individual capacity as a Well owner.

### Any Responsibilities under the Texas Natural Resources Code Did not Establish Privity of Contract

■ Chico argues Crockett could be held personally liable for breach of contract, because in his capacity as a partial owner of the Well, Crockett had a responsibility under the provisions of the Texas Natural Resources Code to ensure that the cleanup was conducted pursuant to the Railroad Commission's remediation letter. Chico contends that Section 91.113 of the Texas Natural Resources Code "make[s], officers, owners, and operators all individually liable for environmental cleanup of wells."[5]

Chico's reliance on Section 91.113 is misplaced. It does nothing to establish that Crockett was a party to any contract, or that Crockett otherwise had any contractual obligation to Chico. Instead, Section 91.113 gives only the Railroad Commission the authority to take action against a "responsible person" when oil and gas wastes or other substances are polluting surface or subsurface water, allowing it to notify a responsible person of the need to take action to cleanup a well site, and to seek reimbursement for any cleanup efforts conducted by the Commission if the responsible person refuses to take action. TEX. NAT. RES. CODE ANN. § 91.113(a) (West Supp. 2016). Even if Crockett could be considered a "responsible person" under the Code, whether the Railroad Commission could have theoretically sought reimbursement from Crockett in no way establishes that Crockett was liable to Chico as a party to a contract with Chico to perform remediation services.

In sum, the only evidence presented to the trial court, which included Chico's pleadings in its prior lawsuit as well as its responses to discovery requests, revealed that Chico's contract was with one of the corporate entities, not with Crockett in his individual capacity as a Well owner.

### Crockett Could not be Liable for Breach of Contract as Black Strata's Managing Member

■ Nor could Crockett be held liable for breach of contract in his capacity as Black Strata's managing member. A corporation is a separate legal entity from its shareholders, officers, and directors. *TransPecos Banks v. Strobach*, 487 S.W.3d 722, 728 (Tex.App.–El Paso 2016, no pet.). A fundamental principle of corporate law is that an individual is permitted to incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations. *Id.* However, under the common law principle traditionally referred to as veil-piercing, when a corporation's owner, shareholder, director, or other affiliate (collectively referred to as a "corporate

---

5. Chico also cites Section 88.133 of the Resources Code, but Section 88.133 does not make owners of wells responsible for cleanups of this nature. Section 88.133 makes officers of corporations and others liable for compliance with the provisions of Chapter 88 of the Code, which, in turn, relates only to the production of oil and gas, and among other things, regulates the types of devices that may be used in measuring production and the need to keep adequate records of a well's production. TEX. NAT. RES. CODE ANN. §§ 88.051, 88.052, 88.053, 88.054, 88.055, 88.056, 88.133 (West 2011).

affiliate") has used the corporate form "as part of a basically unfair device to achieve an inequitable result," courts have been willing to disregard the corporate structure and have allowed a corporate obligee to hold a corporate affiliate personally liable for the corporation's obligations. *Id.* (citing *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex. 1986)). The most frequent basis for disregarding the corporate shield at common law was the use of the "alter ego" theory, in which a corporate obligee was required to demonstrate that the corporate officer had essentially used the corporation for its own "personal purposes," without any regard for corporate formalities. *Id.* at 728–29.

When Chico performed its services in July 2011, two relevant statutes were in effect that severely limited the circumstances under which a member of an LLC could be held personally liable for an LLC's contractual obligations.[6] Simply viewing these two statutes in isolation, we would be compelled to conclude that there was no basis for holding Crockett liable for

Black Strata's contractual obligations. However, prior to legislation making the actual fraud requirement applicable to LLC's,[7] virtually all Texas courts addressing the issue, including the Fort Worth Court of Appeals, did not view the two Code provisions as a complete shield to a managing member's liability for an LLC's contractual obligations. Instead, the courts uniformly applied the same common law principles for "piercing the corporate veil" as were previously applied to corporations prior to the adoption of the actual fraud requirement in the Code in determining whether an LLC's member could be held liable for the LLC's contractual obligations. *See e.g., Shook,* 368 S.W.3d at 614, 621 (recognizing that Texas courts have uniformly held or at least "assumed" that "claimants seeking to pierce the veil of an LLC must meet the same requirements as they would if the entity were a corporation"); *Roustan v. Sanderson,* No. 02–09–00377–CV, 2011 WL 4502265, at *3 & n.6 (Tex.App.–Fort Worth Sept. 29, 2011, no

**6.** Section 101.114 of the Texas Business Organizations Code provides that except to the extent the company agreement specifically provides otherwise, "a member or manager is not liable for a debt, obligation, or liability of a limited liability company[.]" TEX. BUS. ORGS. CODE ANN. § 101.114 (West 2012). Similarly, Section 101.113 further limits a member's liability, providing that: "A member of a limited liability company may be named as a party in an action by or against the limited liability company only if the action is brought to enforce the member's right against or liability to the company." TEX. BUS. ORGS. CODE ANN. § 101.113 (West 2012); *see Spring St. Partners–IV, L.P. v. Lam,* 730 F.3d 427, 443 (5th Cir. 2013) (discussing laws pertaining to the liability of LLC managing members prior to the enactment of Section 101.002 of the Texas Business Organizations Code applying the "actual fraud" requirements to LLC's).

**7.** The Legislature eliminated the "alter ego" theory as a basis for disregarding the corporate structure when it adopted what is now

Section 21.223 of the Texas Business Organizations Code. TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2)(3) (West 2012). Instead, the Legislature provided that a corporate affiliate may be held liable for a corporation's contractual obligations only if it perpetrated an actual fraud for its own personal benefit. *Id.* at § 21.223(b); *see also TransPecos Banks,* 487 S.W.3d at 729 (explaining changes in the law). However, at the time Chico entered into its agreement to perform the cleanup work at the Well site in May 2011, the Legislature had not yet made the actual fraud requirement applicable to Limited Liability Companies, and only did so by legislation effective September 1, 2011. TEX. BUS. ORGS. CODE ANN. § 101.002 (West 2012); *see Shook v. Walden,* 368 S.W.3d 604, 613–14 (Tex.App.–Austin 2012, pet. denied) (recognizing that changes to the Business Organizations Code applying the actual fraud requirement to LLC's came too late to be applied to the plaintiff's case, which arose before those changes became effective).

pet.) (mem. op.) ("Texas courts have applied to limited liability corporations the same state law principles for piercing the corporate veil that they have applied to corporations").

When a plaintiff at common law sought to hold a corporate affiliate personally liable for a contractual obligation of a corporation under any of the veil-piercing theories, the plaintiff had the burden of proof. *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 21 (Tex.App.–Texarkana 2012, no pet.) (the burden to prove alter ego rests upon the party who is arguing it) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002)); *see also Cass v. Stephens*, 156 S.W.3d 38, 59 (Tex.App.–El Paso 2004, pet. denied) (plaintiff had the burden of proving that the defendant perpetrated an actual fraud on the plaintiff for the defendant's own direct benefit in order to hold the defendant personally liable for the corporation's contractual obligations). More importantly, the plaintiff also had the burden to affirmatively plead the proper elements of its theory, and its failure to do so waived its alter ego claims. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991) (the various theories for piercing the corporate veil must be specifically pled or they are waived, unless they are tried by consent); *Town Hall Estates–Whitney, Inc. v. Winters*, 220 S.W.3d 71, 86 (Tex. App.–Waco 2007, no pet.) (the various theories for disregarding the corporate form must be specifically pled or they are waived, unless they are tried by consent).

■ In the present case, Crockett expressly asserted that he was shielded from liability based on his status as a managing member of an LLC, in both his answer and in his motion for summary judgment. In support of that argument, Crockett attached the excerpt from Chico's discovery responses, in which Chico asserted that its

theory of liability was based on the contention that "agents" of Black Strata "ordered" its services, and that "representatives" of Black Strata had directed Chico to invoice Montcrest rather than Black Strata. Yet, as Crockett points out, despite indicating that it was naming Crockett in his capacity as an LLC member, Chico completely failed to come forward with any pleadings, argument, or evidence to establish that Crockett could be held liable on any of the theories for piercing the corporate veil. In fact, Chico failed to allege in any of its pleadings that it was proceeding against Crockett under any alter-ego theory of liability. Chico has thus waived any alter ego or veil piercing theory as a ground for reversal. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (while a non-movant need not respond to a summary judgment to argue on appeal the movant's evidence is insufficient as a matter of law to support summary judgment, "the non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement").

Recognizing this deficiency, Chico appears to argue that its filing a fraud claim against Crockett should suffice to hold Crockett personally responsible for Black Strata's contractual obligations. Chico points out that at common law, a plaintiff could sue a corporate officer for the officer's tortious or fraudulent acts, without the need for piercing the corporate veil. *See, e.g., Morello v. State*, No. 03–15–00428–CV, 2016 WL 2742380, at *5 (Tex. App.–Austin May 6, 2016, no. pet. h.) (mem. op., not designated for publication) (at common law, a corporate officer could be held individually liable when he "knowingly participates in tortious or fraudulent acts . . . even though he performed the act as an agent of the corporation"); *see also Sanchez v. Mulvaney*, 274 S.W.3d 708, 712

(Tex.App.–San Antonio 2008, no pet.) (a corporation's agent is personally liable for his own fraudulent or tortious acts, even when acting within the course and scope of his employment). However, Chico's fraud allegations have nothing to do with Chico's claim for breach of contract. Instead the fraud as alleged by Chico relates solely to the allegation that Crockett made misrepresentations *after* the contract was formed with regard to which entity Chico should invoice. In fact, Chico never alleged that Crockett committed any fraud in the formation of the contract, or that Crockett used Black Strata to fraudulently induce Chico into entering into the alleged contract or that Crockett otherwise used Black Strata to perpetrate any fraud on Chico.

Further, when, as here, a plaintiff's claim sounds in contract, rather than tort, the cases holding a corporate affiliate personally responsible for his tortious or fraudulent acts simply do not apply. *See, e.g., Morello*, 2016 WL 2742380, at *6; *see also Shook*, 368 S.W.3d at 620 (noting that case law and the legislature have long recognized the distinction "between the perceived relative equities of veil-piercing claimants who are asserting tort theories of recovery versus those suing in contract"); *Mulvaney*, 274 S.W.3d at 712 (drawing distinction between contract claims, for which plaintiff may pierce an LLC's veil upon a showing of actual fraud, and tort claims, for which an LLC member is individually liable for his own tortious acts).

Chico failed to assert any alter ego theory in its response, and failed to allege any facts or to produce any evidence to hold Crockett personally liable for any of Black Strata's alleged contractual obligations to Chico. We therefore conclude that under this record, the trial court properly granted summary judgment to Crockett on Chi-

co's breach of contract claim. *See Morello*, 2016 WL 2742380, at *5 (where plaintiff failed to allege any facts that the plaintiff had used its business as a sham to perpetrate a fraud or evade an existing legal obligation, the plaintiff failed to "invoke any veil-piercing theory that Texas law might conceivably recognize in the limited-liability-company context"). Issue Four is overruled.

## The Trial Court Properly Granted Summary Judgment on Chico's Quantum Meruit Claim

In its Issue Five, Chico contends the trial court erred in granting summary judgment on its claim for quantum meruit, arguing that Crockett did not come forward with any evidence to negate an element of this claim. We conclude that because the summary judgment evidence demonstrated the existence of a contract covering the remediation services, Chico could not recover in quantum meruit for those services.

### *Applicable Law*

Quantum meruit is an equitable remedy based on an implied promise to pay for benefits received. *Houston Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 695 (Tex.App.–Houston [14th Dist.] 2013, no pet.); *Bluelinx Corp. v. Texas Constr. Sys., Inc.*, 363 S.W.3d 623, 627 (Tex.App.–Houston [14th Dist.] 2011, no pet.). Quantum meruit implies a contract in circumstances where the parties neglected to form one, but equity nonetheless requires payment for beneficial services rendered and knowingly accepted. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). Consequently, "[a] party generally cannot recover under *quantum meruit* when there is a valid contract covering the services or materials furnished." *Id.*; *see also Truly v. Austin*, 744 S.W.2d

934, 936 (Tex. 1988). When the parties themselves create a valid contract, there can be no recovery under a contract implied by law. *Mintzer*, 417 S.W.3d at 695; *Union Bldg. Corp. v. J & J Bldg. & Maint. Contractors, Inc.*, 578 S.W.2d 519, 520 (Tex.Civ.App.–Houston [14th Dist.] 1979, writ ref'd n.r.e.).

This rule applies not only to express contracts but also to implied-in-fact contracts that arise from the acts and conduct of the parties. *Mintzer*, 417 S.W.3d at 698–700 (explaining in detail how an implied-in-fact contract is distinct from an implied-in-law quantum meruit contract, and concluding that the existence of an implied-in-fact contract, like an express contract, bars recovery in quantum meruit). Further, this rule not only applies when a plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, but also when a plaintiff is seeking to recover "from a third party foreign to the original but who benefited from its performance." *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 462 (Tex.App.–Houston [1st Dist.] 2007, pet. denied) (quoting *Hester v. Friedkin Cos., Inc.*, 132 S.W.3d 100, 106 (Tex.App.–Houston [14th Dist.] 2004, pet. denied)).

### Analysis

The summary judgment evidence demonstrated that Chico provided the remediation services as "ordered by agents for Black Strata, LLC," that Chico invoiced payment for its services, and that "Black Strata, LLC paid with two checks [in] the amount of $10,000.00 each ... leaving a balance due to Plaintiff of $43,415.55." A similar situation arose in *Mintzer*. In that case, Mintzer, an attorney, was defending a man charged with sexually assaulting a minor. 417 S.W.3d at 694. As part of his client's defense, Mintzer's staff contacted Houston Medical Testing Services to arrange a review of the State's forensic tests showing that the client fathered a child with the client's minor step-daughter. *Id.* The Service arranged the review, which confirmed the State's results. *Id.* It later sent Mintzer multiple invoices requesting payment, but Mintzer did not pay the Service. *Id.* Instead, he forwarded these invoices to his incarcerated client, who also did not pay. *Id.* The Houston court recognized that under these facts, an implied-in-fact contract had been created, and that, as with an express contract, the Service could not recover under a quantum meruit theory when an implied-in-fact contract exists. *Id.* at 698–700.

Likewise, in the present case, the summary judgment evidence established the existence of an implied-in-fact contract between Chico and Black Strata, arising from Black Strata's request to Chico for the remediation services, Chico's provision of the remediation services, and Chico's subsequent invoicing for those services, which Black Strata paid in part. As in *Mintzer*, this evidence established the existence of an implied-in-fact contract between Chico and Black Strata covering the remediation services. Likwise, as *Mintzer*, the existence of an implied-in-fact contract covering the remediation services barred Chico from recovery under a quantum meruit theory for those same services. Issue Five is overruled.

### The Trial Court Properly Granted Summary Judgment on Chico's Fraud Claim

In its Issue Six, Chico contends the trial court erred in granting Crockett's motion for summary judgment on its fraud claim, claiming Crockett failed to come forward with any evidence to negate any of the elements of fraud. Crockett, however, moved for summary judgment on Chico's

pleadings. We agree with Crockett that even if Chico's pleadings are accepted as true, Chico's allegations did not rise to the level of an actionable fraud claim, and that the trial court therefore properly granted summary judgment on fraud.

### Chico Waived any Right to Amend its Pleadings

We recognize the general rule that a "summary judgment should not be based on a pleading deficiency that could be cured by amendment." *In Interest of B.I.V.*, 870 S.W.2d 12, 13–14 (Tex. 1994); *Massey v. Armco Steel Co*, 652 S.W.2d 932, 934 (Tex. 1983) (holding that whether pleadings fail to state a cause of action may not be resolved by summary judgment). Instead, a trial court should grant summary judgment dismissing a plaintiff's claims based on a pleading deficiency, only after giving the plaintiff the opportunity to amend his pleadings through a special exception. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998).

A nonmovant, however, waives a complaint that summary judgment was improperly granted on this basis, if the nonmovant fails to raise the complaint in the trial court. *See San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex. 1990) (where plaintiff argued for the first time on appeal that the defendant should have challenged his pleadings through a special exception, which would have given him the opportunity to amend his pleadings in order to state an actionable claim against the defendant, appellate court erred by reversing the trial court's decision on that basis); *Warwick Towers Council of Co–Owners v. Park Warwick, L.P.*, 298 S.W.3d 436, 444 (Tex.App.–Houston [14th Dist.] 2009, no pet.) ("A nonmovant waives a complaint that summary judgment improperly was granted on the pleadings by failing to raise it."); *see also* TEX. R. CIV. P. 166a(c) ("Is-

sues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal" in a summary judgment proceeding). In the present case, Chico failed to raise any such complaint in the trial court, and never asked for the right to amend its pleadings to state a valid fraud claim. Moreover, Chico does not raise this argument on appeal. Accordingly, we conclude that any complaint that the trial court improperly granted summary judgment on the pleadings without an opportunity to amend has been waived.

### Applicable Law

We agree with Chico that a plaintiff may sue a corporation's affiliate for his torts, including fraud, without the need to pierce the corporate veil. *See, e.g., Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002) (an entity's agent is personally liable for his own fraudulent or tortious acts independently of the equitable doctrine of veil-piercing); *Alexander v. Kent*, 480 S.W.3d 676, 698 (Tex.App.–Fort Worth 2015, no pet.) (in an action seeking to hold an officer liable for his own fraudulent statements, the corporate veil is not required to be pierced).

To establish that the corporate affiliate engaged in actual fraud through misrepresentation, the obligee has the burden to establish the existence of the traditional elements of a misrepresentation claim, including that the affiliate engaged in a representation that was: (1) material; (2) false; (3) made knowingly or with reckless disregard for its truth or falsity; (4) made with the intention that it be acted upon by the other party; (5) relied upon by the other party; and (6) damaging to the other party. *TransPecos Banks*, 487 S.W.3d at 728–31; *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of*

*Am.,* 341 S.W.3d 323, 337 (Tex. 2011) (identifying the six elements of fraud).

The plaintiff must further allege and demonstrate that his reliance on the representation was justifiable under the circumstances of a particular case. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 524 (Tex. 1998); *Willis v. Marshall,* 401 S.W.3d 689, 698 (Tex.App.–El Paso 2013, no pet.) (recognizing that "justifiable reliance on defendant's representation" is an element of a fraud claim). In measuring justifiability, a court must inquire whether " 'given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the plaintiff's part.' " *Grant Thornton LLP v. Prospect High Income Fund,* 314 S.W.3d 913, 923 (Tex. 2010) (quoting *Haralson v. E.F. Hutton Grp., Inc.,* 919 F.2d 1014, 1026 (5th Cir.1990)); *see also Lake v. Cravens,* 488 S.W.3d 867, 895 (Tex.App.–Fort Worth 2016, no pet. h) (discussing justifiable reliance requirement).

In addition, in order to establish that the representation was "material," the plaintiff must demonstrate that the representation was of such a nature that a "reasonable person would attach importance to [the representation] and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy Partners, Ltd.,* 341 S.W.3d at 337; *see also*

*Citizens Nat'l Bank v. Allen Rae Investments, Inc.,* 142 S.W.3d 459, 479 (Tex. App.–Fort Worth 2004, no pet.). A representation is not material if it has no effect on the plaintiff's actions. *Citizens Nat'l Bank,* 142 S.W.3d at 478.

### Chico's Pleadings Negate its Fraud Claim

Chico alleged in its petition that Crockett (and Black Strata) committed fraud by "willfully and wantonly" misrepresenting to Chico that Montcrest was the "operator of the well site where the RRC ordered the clean up," and that Chico relied on those representations "to its detriment in its billing process by invoicing Montcrest Energy, Inc. for the clean up as ordered by the RRC." Even if we were to assume for the sake of argument that Crockett misrepresented which parties were the true operators or owners of the Well, we fail to see how any such misrepresentation could be considered "material." As set forth above, the question of which parties were the owners or operators of the Well has no bearing on the question of which party contracted with Chico or which party agreed to be responsible for the services that Chico performed. Similarly, any such misrepresentation would have had no bearing on which party Chico should have invoiced, and more importantly, which parties Chico should have named in its first lawsuit.[8] As such, we conclude that a reasonable person would not have attached any importance to the alleged

---

**8.** In its motion for new trial, Chico explained, for the first time, that it was Chico's standard business practice to invoice the operator of the well when it has provided remediation services at a well site. The mere fact that Chico may have made the decision to rely on Crockett's alleged misrepresentation in determining which party to name in its first lawsuit due to its own internal business policy does not render the representation material;

that a party may have decided to rely on an "otherwise inconsequential representation" does not transform the representation into one that is material. *See Lewis,* 343 F.3d at 545 n.5 (citing *Gen. Am. Life Ins. Co. v. Martinez,* 149 S.W.2d 637, 641 (Tex.App. 1941) (recognizing that "reliance on a misrepresentation is distinct from the materiality thereof, although the distinction may not at all times be clear")).

misrepresentation made by Crockett in determining which party to name in a lawsuit, thereby rendering the alleged misrepresentation of no "practical consequence." *See, e.g., Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 545 (5th Cir. 2003) (any misrepresentation made by the defendant with respect to certain banking issues had no "practical consequence," and was therefore immaterial and could not support a claim for fraud); *see also Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 760–61 (Tex.App.–Fort Worth 2012, pet. denied) (there was no evidence in the record that the defendants made a misrepresentation of an existing material fact upon which the plaintiff could have relied, and the trial court therefore properly granted summary judgment on the plaintiff's fraud claim).

This brings up the real problem with Chico's lawsuit, which in large part centers on Chico's inability to identify with any certainty which of the three defendants it believed was a party to its alleged contract or which party agreed to be charged for its services. Significantly, Chico does not allege that Crockett misled it about who the contracting parties were or which party agreed to be charged for its services. Further, it can hardly be said that Crockett in any way tried to cover up Black Strata's role in this matter, or that he otherwise tried to mislead Chico into believing that Black Strata was not a potential party to the lawsuit. To the contrary, the record clearly indicates that Chico was aware of Black Strata's role in this matter based on Black Strata remitting two payments to Chico in response to the invoice Chico sent to Montcrest, and based on Chico's choice to send its demand letter to Black Strata seeking payment on the invoice.

More importantly, we note that the parties were in a business transaction, and were dealing with each other at arm's length. A party to an arm's length transaction must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated. *See Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962) ("In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests[.]"). Therefore, a fraud plaintiff "cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *See In re Arnette*, 454 B.R. 663, 687 (Bankr. N.D. Tex. 2011) (citing *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003)); *see also Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) ("It is well-established that "'[t]he recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.'") (quoting RESTATEMENT (SECOND) OF TORTS § 541 (1977)); *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 788 (Tex. App.–Dallas 2011, no pet.) (a claim for misrepresentation cannot stand when the party asserting the claim is legally charged with knowledge of the true facts).

In the present case, Chico was on notice that Black Strata was a potential party to the first lawsuit, and on notice of the need to further investigate Black Strata's potential liability prior to filing its first lawsuit.[9]

---

9. Chico recognized in its initial pleading that the identity of the operator of the Well was public information, and was available through the Railroad Commission's records. If in fact Chico believed that the operator of the Well was the appropriate entity to invoice or to name in its lawsuit, it is unclear why Chico did not search the Railroad Commission's records to make that determination prior to filing its first lawsuit.

*See Stierwalt v. FFE Transp. Servs., Inc.,* 499 S.W.3d 181, 189 (Tex.App.–El Paso 2016, no. pet. h.) (plaintiff had a duty to investigate the accuracy of its factual allegations prior to filing suit against defendants); *see also Nath v. Texas Children's Hosp.,* 446 S.W.3d 355, 369 (Tex. 2014) (the Texas Civil Practice and Remedies Code requires that each factual contention in a pleading must have evidentiary support at the time the pleading is filed, or is likely to receive such support after a reasonable opportunity for discovery has passed); *see also Tarrant County v. Chancey,* 942 S.W.2d 151, 155 (Tex.App.–Fort Worth 1997, no writ) (plaintiff's pleading must be "factually well grounded and legally tenable" at the time it is filed).

Accordingly, we conclude that there is nothing in Chico's pleadings to support two essential elements of Chico's fraud claim—that any misrepresentation made was material, and that Chico justifiably relied on a material misrepresentation. We therefore conclude that the trial court properly granted summary judgment on Chico's claim for fraud. Issue Six is overruled.

### The Trial Court Properly Denied Chico's Motion for Continuance

Chico contends the trial court abused its discretion by denying its motion for a continuance of the summary judgment hearing, because it needed time to conduct additional discovery. We disagree.

#### *Standard of Review*

We review a trial court's ruling on a motion for continuance of a summary judgment hearing for an abuse of discretion. *See D.R. Horton–Tex., Ltd. v. Savannah Props. Assocs.,* 416 S.W.3d 217, 222 (Tex.App.–Fort Worth 2013, no pet.) (citing *BMC Software Belg., N.V. v. Mar-*

*chand,* 83 S.W.3d 789, 800 (Tex. 2002)). We must determine whether the trial court acted without reference to guiding rules or principles or whether the trial court's action "was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.; see also BMC Software,* 83 S.W.3d at 800. Unless the trial court acted arbitrarily and unreasonably, we will not disturb its decision on appeal. *Karen Corp. v. The Burlington N. & Santa Fe Ry. Co.,* 107 S.W.3d 118, 124 (Tex.App.–Fort Worth 2003, pet. denied); *Medford v. Medford,* 68 S.W.3d 242, 247–48 (Tex.App.–Fort Worth 2002, no pet.).

#### *Applicable Law*

Under Rule 166a(g), a court may grant a continuance of a summary judgment hearing when it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition[.]" Tex. R. Civ. P. 166a(g). Three nonexclusive factors are used in determining whether a trial court has abused its discretion in denying a motion for continuance that seeks additional time to conduct discovery: (1) the length of time the case has been on file; (2) the materiality and purpose of the discovery sought; and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 161 (Tex. 2004). The Fort Worth Court of Appeals has required a party seeking a continuance to obtain additional evidence to provide an affidavit describing the evidence sought, explaining its materiality, and showing that it has used due diligence to timely obtain the evidence. *See D.R. Horton–Texas, Ltd.,* 416 S.W.3d at 222–23. The party moving for the continuance bears the burden to convince the court that he used due diligence in seeking to

obtain the needed evidence, and must do so by specifying not only the evidence sought, but explaining why it was not obtained earlier in order to avoid the need for a continuance. *Stierwalt*, 499 S.W.3d at 192.

### Chico Waived any Complaint of Discovery Abuse

 Chico contends for the first time on appeal that it was entitled to a continuance in part because the Defendants allegedly failed to timely respond to its discovery requests. *See, e.g., Tempay, Inc. v. TNT Concrete & Constr., Inc.*, 37 S.W.3d 517, 522 (Tex.App.–Austin 2001, pet. denied) (recognizing that a party should not be able to abuse the discovery process and withhold key evidence from its opponents, and then use the lack of evidence to win a judgment). However, a party attempting to blame the opposing party for its inability to obtain discovery, "must be specific in making any such accusation" and must describe the abuses and what relevant information the other party withheld. *Stierwalt*, 499 S.W.3d at 192 (citing *Allen v. United of Omaha Life Ins. Co.*, 236 S.W.3d 315, 325–26 (Tex.App.–Fort Worth 2007, pet. denied)). Accusing a party of discovery abuse without sufficient explanation is insufficient to justify granting a motion to continue a summary judgment hearing. *Id.*

Chico never alleged in the trial court that the Defendants were abusing the discovery process or that the Defendants had failed to timely respond to any of its discovery requests. Further, there is nothing in the record on appeal that would support any such inference. Consequently, we conclude Chico has failed to preserve error regarding this particular complaint. *See* TEX. R. APP. P. 33.1 (to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, unless the grounds are apparent from the context of the request, objection, or motion).

### The Trial Court Did Not Abuse its Discretion

 Chico's motion for a continuance was based solely on the claim it needed additional time to conduct discovery to develop its case and to adequately respond to the motion for summary judgment. Chico, however, failed to verify its motion for continuance or to file an affidavit in support of its request for a continuance. *See Tenneco Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (when a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance); *D.R. Horton–Texas, Ltd.*, 416 S.W.3d at 222. This failure creates a presumption that a trial court did not abuse its discretion in denying the motion for continuance. *See, e.g., Clark v. Compass Bank*, No. 02–07–00050–CV, 2008 WL 2168292, at *2 (Tex.App.–Fort Worth May 22, 2008, no pet.) (mem. op.) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)); *see also Aguilar v. LVDVD, L.C.*, No. 08–01–00438–CV, 2002 WL 1732520, at *3 (Tex.App.–El Paso July 25, 2002, pet. denied) (not designated for publication) (failure to comply with procedural requirements creates a rebuttable presumption that the trial court did not abuse its discretion in denying a motion for continuance).

 Even if it had verified its motion, Chico failed to specify in its motion any valid reasons for granting a continuance. Chico claimed it needed additional time to determine who misled it concerning who was the actual operator of the well "and how such deception took place." As dis-

cussed above, however, the question of who was the operator of the well was not material to any of Chico's claims, and had no bearing on who breached the contract with Chico or who agreed to be charged for Chico's services. The trial court does not abuse its discretion in denying the motion when a party seeks a continuance based on the need to obtain immaterial information that could not have made any difference in the outcome of the case. *See, e.g., Patten v. Johnson,* 429 S.W.3d 767, 776 (Tex.App.–Dallas 2014, pet. denied) (the trial court did not abuse its discretion in denying a motion for continuance to obtain additional discovery when it could have reasonably concluded that the additional discovery was unnecessary or irrelevant to the legal issues in the case); *Manges v. Astra Bar, Inc.,* 596 S.W.2d 605, 612–13 (Tex.Civ.App.–Corpus Christi 1980, writ ref'd n.r.e.) (trial court properly denied motion for continuance to obtain additional discovery where movant failed to show that the evidence sought was material to the case).

Chico's attorney argued at the summary judgment hearing that he needed additional time to ascertain which entity hired Chico to perform the cleanup at the Well site, explaining that Chico was attempting to get that information from Crockett, as a member and officer of both Black Strata and Montcrest. While this information would have been relevant to Chico's claims, Chico made no attempt to explain what steps it had taken to obtain that information prior to filing its motion for continuance, much less why it had not determined who were the responsible parties before filing its lawsuit. *See Stierwalt,* 499 S.W.3d at 189 (discussing plaintiff's duty to investigate the accuracy of its factual allegations prior to filing suit). Consequently, we conclude that the trial court did not abuse its discretion in denying the motion for continuance. *See Schronk v.*

*Laerdal Med. Corp.,* 440 S.W.3d 250, 264 (Tex.App.–Waco 2013, pet. denied) (trial court did not abuse its discretion in denying motion for continuance of summary judgment hearing based on the need to conduct additional discovery where the parties failed to demonstrate that they exercised due diligence in obtaining the additional discovery needed); *Rocha v. Faltys,* 69 S.W.3d 315, 319 (Tex.App.–Austin 2002, no pet.) (same); *see Stierwalt,* 499 S.W.3d at 192 (affidavits that fail to state with particularity what diligence was used to obtain the needed evidence are insufficient to support a motion for continuance of a summary judgment hearing). Issue Seven is overruled.

## CONCLUSION

We affirm.

Hughes, J., not participating